UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES TAYLOR, | Case No. 14-11585 |
| Plaintiff, | Patrick J. Duggan |
| v. | United States District Judge |
| SAVIOE, *et al*, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (Dkt. 11)**

**I.   PROCEDURAL HISTORY**

On February 25, 2014, plaintiff Charles Taylor, an inmate incarcerated by the Michigan Department of Corrections ("MDOC"), brought this action under 42 U.S.C. § 1983, claiming a violation of his rights under the United States Constitution. (Dkt. 1).[1] When plaintiff filed his complaint he was incarcerated at the Carson City Correctional Facility, but the events giving rise to his complaint occurred at the Cooper Street Correctional Facility in Jackson, Michigan. In his *pro se* complaint, plaintiff alleges that defendants the Michigan Department of Corrections ("MDOC"), and unit officers Russell Savioe and Nicholas Sanford violated his Eighth Amendment rights when they required him to retrieve a water

---

[1] Plaintiff originally filed his complaint with magistrate referral in the United States District Court for the Western District of Michigan. (Dkt. 1).

1

hose from an unsafe catwalk and by failing to provide him with adequate medical treatment after he fell from the catwalk. On April 22, 2014, Chief Judge Paul L. Maloney dismissed MDOC pursuant to 42 U.S.C. § 1997e(c) because he concluded that it is immune. (Dkt. 3). Chief Judge Maloney also ordered that the case be transferred to the Unites States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a).

On August 1, 2014, defendants Russell Savioe and Nicholas Sanford filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). (Dkt. 11). On October 29, 2014, District Judge Patrick J. Duggan referred this motion to the undersigned for determination. (Dkt. 13). On December 22, 2014, plaintiff filed a response. (Dkt. 15). Defendants' motion for summary judgment is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment (Dkt. 11) be **GRANTED**, and plaintiff's complaint against defendants be **DISMISSED** without prejudice.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Complaint

Plaintiff alleges that he was a unit porter for the 3rd and 4th gallery of the housing unit. (Dkt. 1, Compl, at 3). Plaintiff informed defendant officers Russell Savoie and Nicholas Sanford that he was afraid of heights. (*Id.*) Defendants

2

would laugh at plaintiff when he would go up to the third and fourth gallery, needing to hold onto the walls because of his fear of heights. (*Id.*) Then, defendant Savoie changed plaintiff's job to shower porter. (*Id.*) Plaintiff's responsibilities included going to the back catwalk to retrieve the water hose. (*Id.*) The back catwalk was a two-foot wide steel platform that was open on each side. (*Id.*) If a person were to fall, they would fall to the basement into a ten-foot hole. (*Id.*) On April 5, 2013, plaintiff fell to the basement from the catwalk and was injured, including suffering a seizure. (*Id.*) Defendants Savoie and Sanford, together with other medical staff and emergency medical technicians were able get plaintiff out of the hole and thereafter transferred him to Alliance Hospital. (*Id.*) As a result of the fall, plaintiff suffered bruises on his head, neck, and back, and required the assistance of a wheelchair. (*Id.*) Plaintiff's legs and neck still experience pain and numbness, and plaintiff continues to have nightmares about the fall. (*Id.*)

    B.    <u>Arguments</u>

        1.    Defendants' Motion for Summary Judgment

Defendants Savoie and Sanford raise two primary arguments in their motion for summary judgment: (1) plaintiff failed to properly exhaust his administrative remedies, and (2) defendants are entitled to qualified immunity. (Dkt. 11, Defs.' Mot. Summ. J. at 8-18). For either of these reasons, defendants ask the court to

grant summary judgment in their favor. (*Id.*)

        a.    Exhaustion

Defendants argue that it is essential for a prisoner-plaintiff to properly exhaust his administrative remedies before bringing a lawsuit by first filing a grievance that complies with the prison grievance system regarding the allegations made in his complaint. Defendants contend that an untimely filed grievance, even if appealed through all stages of the grievance process, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). According to defendants, this would "permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." (Defs.' Mot. Summ. J. at 11; citing *Woodford* 548 U.S. at 97). Rather, a prisoner-plaintiff must exhaust all three steps of the grievance process. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

Defendants claim that the administrative process applicable to plaintiff's claims is governed by MDOC's Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007). (Defs.' Mot. Summ. J. at 12-13; *see also* Ex. 3). The policy directive states, in pertinent part:

> E.     Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.

4

* * *

P.    Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.

* * *

R.    A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

* * *

<u>Step I</u>

V.    Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator

5

>        designated for the facility, field office or other
>        office being grieved....
>
>                              * * *
>
> Step II
>
> BB.    I grievance if s/he is dissatisfied with the response
>        received at Step I or if s/he did not receive a timely
>        response. To file a Step II grievance, the grievant
>        must request a Prisoner/Parolee Grievance Appeal
>        (CSJ-247B) from the Step I Grievance
>        Coordinator and send the completed form to the
>        Step II Grievance Coordinator designated for the
>        facility, field office, or other office being grieved
>        within ten business days after receiving the Step I
>        response or, if no response was received, within
>        ten business days after the response was due,
>        including any extensions.
>
>                              * * *
>
> Step III
>
> FF.    A grievant may file a Step III grievance if s/he is
>        dissatisfied with the Step II response or does not
>        receive a timely response. To file a Step III
>        grievance, the grievant must send a completed
>        Step III grievance, using the Prisoner/Parolee
>        Grievance Appeal form (CSJ-247B), to the
>        Grievance and Appeals Section within ten
>        business days after receiving the Step II response
>        or, if no response was received, within ten
>        business days after the date the response was due,
>        including any extensions.

Defendants argue that plaintiff failed to exhaust his administrative remedies through Step III. (Defs.' Mot. Summ. J. at 14-15). Specifically, defendants say

that plaintiff filed a step I grievance (No. RGC 13-07-00801-28E) regarding his fall from the catwalk; however, that grievance was rejected as untimely. (*Id*. at 14; *see also* Ex. 5). Defendants also contend that there is no evidence that plaintiff pursued the matter through step III of the grievance process. (Defs.' Mot. Summ. J. at 14). Defendants attach a certified MDOC prisoner step III grievance report which indicates that plaintiff did not file a step III grievance any time from May 2009 until June 2014 regarding the events outlined in his Complaint. (Defs.' Mot. Summ. J. Ex. 4).

### b. Qualified Immunity

Defendants also argue that even if plaintiff had exhausted his administrative remedies, summary judgment should still be granted in their favor because they are entitled to qualified immunity. (Defs.' Mot. Summ. J. at 15-17). Defendants contend that they are entitled to qualified immunity here because there is insufficient evidence that their actions violated clearly established law. (*Id*. at 16). Indeed, corrections employees "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants argue that when qualified immunity is raised in a motion for summary judgment, a plaintiff may not merely rest on his pleadings. Rather, a court must "determine whether the plaintiff has

7

alleged sufficient facts, *and supported the allegations by sufficient evidence*, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (emphasis added). Moreover, the right the official is alleged to have violated must have been clearly established in a particularized sense. In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority." *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013). Here, defendants argue that the work conditions described by plaintiff do not violate the constitution. Defendants contend that there is no evidence that they were aware of any inherently dangerous work conditions. Moreover, plaintiff was not even required to work; indeed, he volunteered. For these reasons, defendants assert that they are entitled to qualified immunity.

    2.    Plaintiff's Response

Plaintiff filed a response to defendants' motion for summary judgment which essentially restates the facts of the Complaint and corrects what he believes to be misstatements of fact in defendants' motion. (Dkt. 15, Pl.'s Resp.).

Importantly, plaintiff does not specifically address defendants' arguments on summary judgment, namely that plaintiff failed to exhaust his administrative remedies, or defendants' arguments relating to qualified immunity. Instead plaintiff focuses on factual variations between his version of events with those of the two defendants. *Compare* (Dkt. 1 & Dkt. 15) *with* (Dkt. 11 and Exs. 2 & 3).

### III. ANALYSIS AND CONCLUSIONS

#### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the nonmoving party. *Anderson*, 477 U.S. at 248, 251.

    B.    <u>Exhaustion</u>

        1.    Legal Standards

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative

11

defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

2. Plaintiff Failed to Exhaust his Administrative Remedies

Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. (*See* Defs.' Mot. Summ. J. at Ex. 4). First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution.

If the prisoner is not satisfied with the Step I outcome, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. The Step III response ends the administrative process.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved." (Dkt. 11-4). A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant. (*Id.* ¶ G1). A grievance may also be rejected if the grievance is untimely. (*Id.* ¶ G4).

The undersigned concludes that defendants have shown that plaintiff failed to exhaust his administrative remedies in this case. First, defendants attach plaintiff's step I grievance form, which indicates that the grievance was "rejected as untimely." (Dkt. 11, Defs.' Mot. Summ. J. at Ex. 6). Plaintiff has brought forward no evidence or argument to counter defendants' step I grievance form. Second defendants attach the MDOC prisoner step III grievance report indicating that plaintiff did not file a step III grievance regarding the events listed in his complaint between the dates of May 2009 and June 10, 2014. (*Id.* at Ex. 5).

Again, plaintiff has not come forward with any evidence that he brought a step III grievance during the relevant time period that would serve to counter defendants' MDOC prisoner step III grievance report. In response to defendants' motion for summary judgment, plaintiff attempted to create a material issue of fact with respect to the parties' accounts of the underlying incident, but simply did not address the exhaustion issue.

As such, for the above-stated reasons, the undersigned concludes that defendants have met their burden of showing that plaintiff has failed to exhaust his administrative remedies.

## IV. RECOMMENDATION

For the above-stated reasons, the undersigned **RECOMMENDS** that defendants' motion for summary judgment (Dkt. 11) be **GRANTED**, and plaintiff's complaint against defendants be **DISMISSED** without prejudice. Given the foregoing conclusions, the remaining arguments for summary judgment posited by defendants need not be addressed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 23, 2015                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on April 23, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Charles Taylor #232897, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846.</u>

                                        <u>s/Tammy Hallwood</u>
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov